IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES NU AUSAR-EL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:10-CV-569-MHT |
| | ) | |
| BAC (Bank of America) HOME LOAN SERVICING, L.P. | ) ) | |
| | ) | |
| Defendant. | ) | |

### **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law.  (Doc. 3, filed July 6, 2010).  Pending before the Court is the Defendant's *Motion to Dismiss, or, In the Alternative, Motion for More Definite Statement*.  (Doc. 6, filed July 29, 2010).  For good cause, it is the recommendation of the Magistrate Judge to grant the Defendant's motion to dismiss.

### **I.  PARTIES AND COMPLAINT**

Charles Nu Ausar-el, formerly known as Charles S. Small, Jr., ("Plaintiff" or "Ausar-el") is a resident of Elmore County, Alabama.  Doc. 1 at 2.  BAC (Bank of America) Home Loan Services, L.P. ("Defendant" or "Ausar-El") is a financing company doing business in the State of Alabama.  *See* Doc. 1. Ausar-El obtained a mortgage from Countrywide Home Loans, Inc. ("Countrywide") on or about June 26, 2007 to purchase property located at 306 Curlee Way, Wetumpka, Alabama 36092.  Doc. 1-1 at 25 - 43.  Ausar-el executed a note and mortgage that entitled Countrywide to foreclose on the property in the event of a default by Ausar-El.  *Id*.

Countrywide subsequently assigned its rights in the note and mortgage to BAC. *Id.* at 39. Ausar-El eventually defaulted under the terms of the note and mortgage. On June 29, 2010, BAC foreclosed on the mortgage. The complaint revolves around the mortgage financing and subsequent foreclosure of Ausar-El's residence in Elmore County, Alabama. Doc. 1 at 2.

On July 1, 2010, Charles Nu Ausar-El ("Plaintiff" or "Ausar-El") filed this action against BAC (Bank of America) Home Loan Services, L.P. ("Defendant" or "BAC"). *See* Doc. 1. On July 29, 2010, BAC filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 6. Ausar-El filed his response to BAC's Motion to Dismiss on August, 6, 2010. Doc. 11. On August 9, 2010, Ausar-El filed an amendment to his August 6th response. Doc. 12. On August 27, 2010, BAC filed its reply to Ausar-El's response. Doc. 13.

Ausar-El alleges several causes of action against BAC relating to BAC's foreclosure of Ausar-El's residence in Elmore County, Alabama. *See* Doc. 1. Ausar-El alleges that BAC violated several laws one them being the Fair Debt Collection Practices Act. *Id.* According to Ausar-El, BAC sent a Notice of Acceleration of Promissory Note and Mortgage on May 20, 2010.[1] Doc. 1 at 4. The Notice of Acceleration informed Ausar-El of his right to verification of the debt. Doc. 1-1 at 5. Ausar-El responded to BAC's notice by requesting verification of the debt. *Id.* On July 11, 2010, BAC's attorney sent Ausar-El a letter that included the payoff amount, information about possible reinstatement of the loan, and the scheduled date of the foreclosure sale. Doc. 1-1 at 23-24. The July 11 letter also included copies of Ausar-El's mortgage, note, and payment history as verification of the debt. Doc. 1-1 at 25-48. On June 15, 2010, Ausar-El responded to BAC's June 11 letter. Ausar-El's June 15 letter claims that BAC's verification of the debt was improper because the copies were unsworn copies. Doc. 1-1 at 1.

---

[1]   Notice of Acceleration letters typically stem from some form of default by the mortgagor. Here, Ausar-El never disputes that his account is in default or, in the alternative, that his payments were current. He only disputes BAC's method of verifying the debt.

On June 29, 2010, BAC foreclosed on and demanded possession of Ausar-El's residence located at 306 Curlee Way, Wetumpka, Alabama.  Doc. 1-1 at 3.  Ausar-El filed this action two days later requesting injunctive relief and rescission of the foreclosure sale along with additional claims for relief.[2]

## II.  STANDARD OF REVIEW

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure.  Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  *Gilmore*, 125 F. Supp.2d at 471.  To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Igbal*, — U.S. — , — , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.).  In considering a defendant's motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept all the plaintiff's well-pleaded facts as true." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citing *St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)).  In other words, in deciding a 12(b)(6) motion to dismiss, the court will accept the petitioner's allegations as true.  *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L. Ed.2d 59 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998);

---

[2]   The Court denied Ausar-El's request for a temporary restraining order (TRO) on July 6, 2010.  *See* Doc. 2.

*Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true).[3]

Thus, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S.Ct. at 1966. Further, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* It is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 1968 (internal quotation and alteration omitted). That said, a complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts. *Twombly*, 550 U.S. at 555-56, 127 S.Ct. at 1965-66. Consequently, the threshold for a complaint to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

### III. DISCUSSION AND ANALYSIS

This case presents many of the typical problems with *pro se* litigants. While it is evident that Ausar-El did significant legal research, he struggles to set forth "a short and plain statement" of his claim showing that he is entitled to some form of relief. His complaint and response to BAC's motion to dismiss are hard to comprehend at times. Most of the issues remain relatively unclear and indecipherable from the face of the complaint. One issue, however, is clear. Ausar-El's complaint stems from what he deems to be a lack of verification of the alleged debt by BAC and its counsel prior to the foreclosure sale. As BAC points out, BAC is not a "debt collector" for purposes of the Fair Debt Collection Practices Act ("FDCPA" or "Act")[4] and even if BAC is a debt collector it properly verified the debt when it sent Ausar-El photocopies of the note, mortgage, and payment history.

**A.   Bank of America is not a debt collector for purposes of FDCPA**

The Court finds *Warren v. Countrywide Home Loans, Inc.* instructive. 342 Fed. Appx. 458 (11th Cir. 2009). In *Warren*, the debtor claimed that Countrywide violated the FDCPA by failing to respond to his request for verification of the debt prior to foreclosing on the debtor's residence. *Id*. at 460. The District Court dismissed the debtor's FDCPA claims. *Id*. at 459. The Eleventh Circuit held that a foreclosure is not a "debt collection activity" for purpose of the FDCPA. *See id*. at 460 (finding that if "a person enforcing a security interest is not a debt collector, it likewise is reasonable to conclude that enforcement of a security interest through the foreclosure process is not debt collection for the purposes of the [FDCPA]."). The Eleventh Circuit concludes foreclosure on a home is not a debt collection activity for purposes of the FDCPA. Therefore, Countrywide was not a "debt collector" for purposes of the FDCPA. *See id*. Thus, the Plaintiff "did not, and could not, state a claim" under §1692g of the FDCPA for

---

[4]   *See* 15 U.S.C. § 1692 *et seq.*

Countrywide's foreclosure practices. *Id*. The Eleventh Circuit further cites a number of other cases that support its proposition that a foreclosure is not a debt collection activity under the FDCPA. *Id*. at 460-61 (collecting cases from various other circuits).

Ausar-El brings an identical claim to the claim brought by the debtor in *Warren*. Ausar-El claims that BAC violated the FDCPA when BAC presented "unsworn photocopies" of the note, mortgage, and payment history as opposed to originals or some form of verified copy.[5] Doc. 1 at 5. In *Warren*, the debtor claimed Countrywide's failure to provide verification of debt prior to the foreclosure violated the FDCPA. *Id*. at 460. Likewise, Ausar-El based his claim on inadequate verification of the debt prior to foreclosure. The Eleventh Circuit holds that an alleged failure to supply adequate verification does not equate to a violation of the FDCPA concerning foreclosure procedure because foreclosure is not a "debt collection activity." *See id*. at 461. Even if BAC gave nothing to Ausar-El, BAC would not thereby violate the FDCPA according to the *Warren* decision. *See id*. Ausar-El fails to state a claim for which relief may be granted under the FDCPA and his action against BAC warrant dismissal.

In addition, the plain language of the FDCPA supports the determination that BAC is not a debt collector for purposes of the Act. The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the *collection of any debts*." 15 U.S.C. §1692(a)(6) (emphasis added). While BAC may fit this description, 15 U.S.C. §1692(a)(6)(F) excludes persons collecting a debt when that person either (a) originated the debt, or (b) the collection "concerns a debt which was not in default at the time it was obtained by such persons." Furthermore, the legislative history suggests that a mortgagee and its assignee, including mortgage servicing companies, are not debt

---

[5] Ausar-El's complaint is devoid of any factual allegation relating to whether the debt itself is valid or not. Ausar-El only contends that the FDCPA requires something more than a photocopy of the note, mortgage, and payment history for verification purposes.

collectors under the FDCPA when the debt is not in default at the time the mortgage-holder acquires the debt. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (citing S. Rep. No. 95-382, 3-4 (1977), U.S. Code Cong. & Admin. News 1977, p. 1965, 1968). Thus, as BAC asserts in its motion, BAC is not a "debt collector" for purposes of the FDCPA. Accordingly, the undersigned finds that Ausar-El's claims against BAC based on the FDCPA must be dismissed.

Even if BAC was a debt collector for purposes of the FDCPA, BAC properly verified the debt as required by the FDCPA. The FDCPA provides that, once a debtor disputes the debt, the debt collector "will obtain verification of the debt […] and a *copy* of such verification will be mailed to the consumer." 15 U.S.C. § 1692g (2006) (emphasis added). The plain language of the § 1692g supports the conclusion that BAC complied with the FDCPA whether it was required to or not. *See Graziano v. Harrison*, 950 F.2d 107, 112-13 (3d Cir. 1991).

**B.    Ausar-El fails to state any facts to support a claim under Alabama's Uniform Commercial Code**

Ausar-El appears to allege three violations of the Alabama Uniform Commercial Code. Doc 1. Specifically, the Complaint mentions §§ 7-2-302, 7-3-309, and 7-3-501.[6] Ausar-El alleges that the mortgage to BAC is unconscionable pursuant to §7-2-302 of the Alabama Commercial Code. ALA. CODE (1975). First, Ausar-El cites the wrong statute for legal authority for his claim.[7] However, even if he had cited to the correct Alabama statute, he fails to specify any unconscionable terms of the contract. Again, the only factual allegations in the Complaint are that BAC failed to provide proper verification of the debt. Thus, Ausar-El's claims of unconscionability are not supported by factual allegations and thereby warrant dismissal.

---

[6]    Ausar-El appears to cite to the Model Uniform Commercial Code and not Alabama's Uniform Commercial Code as codified in ALA. CODE § 7-1-101, et seq. (1975). The Model Uniform Commercial Code is not the law of Alabama. In the alternative, the undersigned applies the Alabama Uniform Commercial Code, which is the only plausible substitute for the commercial code citations set forth in Ausar-El's complaint.
[7]    Ausar-El cites ALA. CODE §7-2-302, which is relevant only to the sale of goods. *See* ALA. CODE §7-2-102. ALA. CODE § 5-19-16 (1975) relates to unconscionability in consumer credit transactions.

Ausar-El's next cause of action stems around §7-3-309 of the Alabama Uniform Commercial Code. Doc. 1. §7-3-309 applies to the enforcement of lost, stolen, or destroyed commercial paper. § 7-3-309 grants a person not in possession of an instrument the authority to enforce the agreement. §7-3-309 applies when "[a] person seeking enforcement of an instrument under [§7-3-309(a)] must prove the terms of the instrument and the person's right to enforce the instrument." ALA. CODE §7-3-309(b) (1974). First, BAC does not seek to enforce a lost, stolen, or damaged agreement. Second, the agreement, which is the basis of this action, is not lost. Ausar-El requested verification of the debt from BAC and BAC provided that verification in the form of copies of the agreement. Doc. 1-1 at 25-38. Ausar-El's complaint does not allege that the instrument is unavailable. Instead, Ausar-El alleges that the copies of the note, mortgage, and payment history provided by BAC are insufficient verification of the debt and Ausar-El seems to insinuate that production of photocopies as opposed to originals somehow equates to the instrument being lost. Ausar-El never alleges that the debt is invalid. Ausar-El only contends that the copies were insufficient under the FDCPA. BAC has no reason to forward the originals to Ausar-El unless the debt is paid in full. If lenders routinely forwarded the originals as verification of the debt, then many debtors would insure the document were lost or destroyed. Furthermore, Ausar-El brought this suit against BAC. BAC did not bring this action against Ausar-El to enforce the provisions of a lost or destroyed contract. BAC simply executed its power of sale through its authority under a valid security agreement, which BAC recorded in the Elmore County probate records. Doc. 1-1. For the foregoing reasons, Ausar-El's claim under §7-3-309 of the Alabama Commercial Code should be dismissed.

Ausar-El also contends that BAC violated § 7-3-501 of the Alabama Code. § 7-3-501 relates to the presentment requirements of negotiable instruments. Here, the only negotiable

instrument is the promissory note from Ausar-El in favor of BAC.  The promissory note, however, expressly waives the right to presentment.[8]  Doc. 1-1 at 26.  Pursuant to Alabama law, presentment is excused when "by the terms of the instrument presentment is not necessary to enforce the obligations of the indorsers or the drawer."  ALA. CODE § 7-3-304(a) (1975).  Ausar-El has no rights of presentment under his promissory note to BAC.  Therefore, his claim under § 7-3-501 fails to state a claim for which relief may be granted.

C.  **Ausar-El's complaint fails to allege any facts that tend to support his claim that BAC violated the Code of Alabama**

Ausar-El inartfully alleges BAC committed fraud or deceit pursuant to §§ 6-5-102 and 6-5-104 of the Alabama Code.  Doc 1 at 4.  Alabama law recognizes a cause of action for "suppression of a material fact which the party is under an obligation to communicate constitutes fraud." ALA. CODE § 6-5-102 (1975).  As the BAC points out, Ausar-El's complaint fails to allege any facts that would establish a cause of action under § 6-5-102.  *Id*.  The complaint establishes that Ausar-El requested verification of the alleged debt from BAC.  Pursuant to this request, BAC sent Ausar-El copies of the mortgage, note, and payment history for his account.  These facts do not support Ausar-El's claims that BAC committed fraudulent suppression because BAC provided the verification that Ausar-El requested when it sent him a photocopy of his note, mortgage, and payment history.  *See Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So.2d 883, 894 (Ala. 2005) (holding that it would be unreasonable to impose a duty on a party when the questioning party fails to articulate with reasonable clarity the particular information desired).  Furthermore, The Complaint fails to contend that BAC concealed any "material fact."  *See* ALA. CODE § 6-5-104 (1975).  Without any factual allegations to support his claims, Ausar-El's complaint cites Alabama code sections that grant a cause of action for

---

[8]  Paragraph 9 of the promissory note between Ausar-El and BAC states that "[Ausar-El] and any other person who has obligations under this Note waive the rights of presentment."

fraudulent suppression. Thus, the undersigned recommends Ausar-El's count for fraudulent suppression should be dismissed.

Next, Ausar-El claims that BAC committed deceit under Alabama law. The Code of Alabama provides that "one who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers." ALA. CODE § 6-5-104 (1975). Ausar-El again cites to another Alabama statute without providing any facts or details that justify his assertions. It is incumbent upon Ausar-El to allege some fact that tends to support his cause of action. Ausar-El cites to Alabama's statutory authority for a claim of deceit but fails to describe any facts that would amount to a claim of deceit against BAC. The allegations, even construed liberally, contain insurmountable shortcomings. Ausar-El admittedly asked for verification of the debt, which BAC sent to him when it forwarded photocopies of his note, mortgage, and payment history. Nothing in Ausar-El's complaint tends to establish that BAC tried to deceive Ausar-El in any way, such as refusing his request for verification of the debt or falsely altering the terms of the note. Thus, Ausar-El has failed to state a claim upon which relief may be granted. As a result, the undersigned determines that Ausar-El's claim for deceit is due dismissal.

## IV. CONCLUSION

BAC foreclosed on Ausar-El's property pursuant to a power of sale clause in the security agreement from Ausar-El in favor of BAC pursuant to the applicable laws of the State of Alabama. Ausar-El alleges a number of causes of action including violations of the Fair Debt Collection Practices Act, Alabama's Uniform Commercial Code, and the Alabama Code. In each instance, Ausar-El fails to specify any facts that tend to support his legal conclusions regarding these violations and he otherwise cites to legal authority not applicable to or binding in

this jurisdiction.  Furthermore, Ausar-El's response to BAC's Motion to Dismiss offers no legal justification to deny the motion.  Instead, Ausar-El simply reargues his position that he initially set forth in his complaint.  BAC exercised its power of sale pursuant to a valid security agreement with Ausar-El and within the limitations of the laws of the State of Alabama.  Ausar-El's fails to include factual allegations that would reasonably support a finding that BAC committed any of the wrongful acts alleged in the complaint and response.

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that:

(1) Defendant's *Motion to Dismiss* (Doc. 6) under Rule 12(b)(6) be **GRANTED**.

(2) Plaintiff's claims be **DISMISSED**.

(3) Any other outstanding motions be **DENIED as moot**.

**IT IS FURTHER ORDERED** that the parties file any objections to this *Recommendation* on or before **December 7, 2010.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206

(11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 22nd of November, 2010.

                                 /s/ Terry F. Moorer
                                 TERRY F. MOORER
                                 UNITED STATES MAGISTRATE JUDGE